ADAMS, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH R. WARD, III, | ) | CASE NO.  5:04CV0691 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | <u>MEMORANDUM OF OPINION</u> |
| ERIC FINK, PROSECUTOR, etc., et al., | ) | <u>AND ORDER</u> |
| | ) | [RESOLVING DOC. 90] |
| Defendants. | ) | |

This action is before the Court upon the Motion for Summary Judgment of Defendants
Portage County, Ohio ("County") and Assistant Prosecutor Eric Fink ("Fink") (collectively
"Defendants") (Doc. 90).  Defendants move for summary judgment pursuant to Fed. R. Civ. P.
56(c) on all claims asserted against them in Plaintiff, Kenneth R. Ward's ("Ward") Second
Amended Complaint (Doc. 46).  For the reasons stated herein, Defendants' Motion for Summary
Judgment is GRANTED in its entirety.  Specifically, the Court finds that no issues of material
fact remain for a jury to decide on any of Ward's federal and state claims.

## I.  <u>PROCEDURAL HISTORY</u>

Ward filed his Second Amended Complaint on November 19, 2004, which Defendants

timely answered on February 11, 2005. *See* Doc. 71.[1] Subsequently, on April 25, 2005,

Defendants filed the instant Motion for Summary Judgment. Ward has not opposed the motion.

Accordingly, Defendants' unopposed Motion for Summary Judgment is ripe for adjudication.

The salient facts are set forth below.

## II. FACTS

On April 14, 2002, at approximately 1:00 a.m., Ward entered Hot Shots, a bar in the City

of Ravenna. He wanted to speak with his former girlfriend, Pauline Page ("Page"). Page

recently ended a one-and-a-half year relationship with Ward; however, Ward "was trying to

work it out." On the night in question, Page had stood Ward up for a date. Thereafter, Ward

searched for Page, correctly assuming she would be at Hot Shots.

Hoping to speak with Page, Ward approached her in the bar and grabbed her by the arm.

Page extricated her arm from Ward's grip and refused to speak with him. Ward then asked if the

two could talk after the bar closed. Page allegedly shook her head in agreement. Ward remained

in the bar, watching Page dance with others until the bar closed at 2:00 a.m. At that time, Page

left with her friend, Brandi Svoboda ("Svoboda"). She did not attempt to speak with Ward upon

exiting the bar.

Ward followed Page and her friend out of the bar, but he did not immediately attempt to

speak with Page, as Page and Svoboda became engaged in conversation with men in the parking

lot. Ward waited for the men to leave; then, he approached Page to ask her why she stood him

---

[1] In addition to the Defendants discussed herein, the Second Amended Complaint names as defendants: City of Ravenna, Ohio; Mayor Paul H Jones; Police Chief Randall McCoy; Police Officer Richard Bennett; Police Officer Kevin Lafferty; and Jennifer Gilliam. The Court disposed of the claims against all of these defendants except Gilliam on summary judgment by Order dated March 25, 2005 (Doc. 84). On March 28, 2005, the Court granted by marginal entry order Gilliam's unopposed Motion to Quash. *See* Doc. 86. Therefore, this Order does not address these previously decided issues.

up.  Ward testified at his deposition that Page "was mouthy" and said that she did not want to talk to him.  Ward and Page argued.  This culminated with Page and Svoboda entering Page's van in order to leave.

According to Ward, he and Page were arguing as Page started to pull away.  Ward held onto the driver's side door of the van as Page began driving.  Ward testified that he held onto the door because he feared being injured if he let go.  Page stopped the van in order to close her door.  Ward closed the van door, hitting Page's arm.  Ward contends that he closed the van door with normal force.

Officer Kevin Lafferty, of the Ravenna Police Department, observed the confrontation between Ward and Page.  As Ward walked away from Page's van, Officer Lafferty informed Ward that he observed the incident and that Ward was not free to leave.

In his Investigation Report, Lafferty wrote that while on patrol, he "observed a[n] older van coming out of the Ravens Bar parking lot, with a [woman] driver behind the wheel.  There was a black male walking alongside [the van] holding onto the door."  Officer Lafferty further reported:

> When r/o got a little closer, I could hear the driver telling the man to leave her alone.  The man started yelling back at her as I pulled along side their van.  The male became really enraged and slammed the door at the driver.  I could tell by the expression on the driver[']s face that the door hit her.  R/o got out of the car and ordered the male to come to me.  He was advised he was under arrest.  He said he was going to just leave and forget the whole thing.  He was walking away.
>
> R/o walked around the van and ordered the man back to my car, so I could cuff and pat him down.  He came back and he was then cuffed, and ID was made.  This was a Kenneth Ward from Cleveland.  The driver was a [girlfriend], that broke up with him a month ago, a Pauline Page.  There was a passenger in the van too, a Brandi Svoboda.

3

Lafferty obtained a written statement from Page.  Page wrote:

> My friend [and] I were in Hot Shots.  Kenny called Brandi's cell phone, did not
> answer her, we (Brandi [and] I) were dancing.  Kenny came up to us [and] was
> [d]ancing.  I tried to leave - he grabbed my arm [and] Brandi grabbed me [and]
> pulled[.]  We left the dance floor.  Kenny followed [and] sat in a chair until the
> bar closed.  Brandi [and] I left with some friends.  Kenny followed.  [H]e said he
> wanted to talk.  I said no, he grabbed my van door and I sped up[. H]e did not let
> go [and] that is when the officer pulled in.  At this time Kenny was slamming the
> door on me.

Lafferty arrested Ward without incident and Sergeant Bennet transported Ward to the

Ravenna Police Station.  While at the station, the Ravenna Police booked Ward and charged him

with assault.  After a short detention, the Ravenna Police transferred Ward to the Portage County

Jail, where Ward made bond and was released a few hours later.  Upon his release, Ward was

scheduled to appear in the Portage County Municipal Court on April 16, 2002, but he failed to

do so and a warrant issued for his arrest.  On July 28, 2002, Cleveland Police arrested Ward

pursuant to the warrant and subsequently transferred him to a Ravenna Police Officer who

transported Ward to the Portage County Jail.

Following the filing of the assault charge, Fink, undertook the prosecution of the case.  In

October of 2002, upon learning that Page would not cooperate with the prosecution, Fink

dismissed the charge against Ward.  The present litigation subsequently ensued in April of 2004.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there exists no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In considering a

motion for summary judgment, the district court must construe the evidence and draw all

reasonable inferences in favor of the nonmoving party. *Matushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).  Courts weigh the evidence not to determine the truth of

4

the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  It is the law of the Sixth Circuit that Fed. R. Civ. P. 56 requires a court, even where a motion for summary judgment is unopposed, to determine that the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court can award summary judgment. *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 410 (6th Cir. 1992); *Donlin v. Watkins*, 814 F.2d 273, 277 (6th Cir. 1987).  A genuine issue for trial exists in the case at bar when there is sufficient evidence on which the jury could reasonably find for Ward. *Anderson*, 477 U.S. at 252.

## IV.  ANALYSIS

**A.**    **Fink is absolutely immune from suit on Ward's federal claims.**

Although it is not entirely clear from the Second Amended Complaint, Ward's claims against Fink appear to be framed as civil rights violations under 42 U.S.C. § 1983.

Section 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976).  Prosecutors were generally immune from suit at common law. *Id.* at 424.  In *Imbler*, the United States Supreme Court extended the application of absolute prosecutorial immunity to § 1983 civil suits for damages. *Id.* at 427.  This immunity is based on the underlying considerations that if the prosecutor were not immune from suit, "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 422-23.

5

This rule is not without limits however.  Generally, absolute prosecutorial immunity is available for only those activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430.  Therefore, prosecutors are absolutely immune in § 1983 actions only in "initiating a prosecution and in presenting the State's case." *Id.* at 431.  When the prosecutor functions as an administrator or investigator, absolute immunity does not apply; but rather,  the prosecutor is afforded only qualified immunity.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-274 (1993).  The Sixth Circuit noted in *Ireland v. Tunis*, 113 F.3d 1435 (6th Cir.), 522 U.S. 996 (1997), however, that absolute immunity encompasses those "administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution." *Id.* at 1447 (footnote omitted).

When deciding if absolute immunity applies, courts use a "functional approach." *Buckley*, 509 U.S. at 269.  Here, a court must look to  "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988).  Moreover, "the official seeking absolute [prosecutorial] immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

In the case at bar, Defendants brought forth sufficient evidence to establish that absolute immunity should apply to the functions in question.  Plaintiff's § 1983 claims stem from his assertion that his arrest was not supported by probable cause; thus, he was not properly brought under the jurisdiction of the Portage County Municipal Court. Doc. 46 at ¶ 2.  Plaintiff further asserts that Fink continued to prosecute Plaintiff after Plaintiff put Fink on notice, through a

6

motion to dismiss, that Plaintiff was not properly under the jurisdiction of the Portage County Municipal Court.  *Id.* at ¶ 19.

The Court previously concluded in its Order, dated March 25, 2005 (Doc. 84), that probable cause for arrest existed in the present case. *Id.* at 7-8.  Additionally, Fink's actions in the case at bar fall squarely within the range of protected acts contemplated by the Supreme Court in *Imbler*, *supra*.  First, Plaintiff has not averred that any of the functions performed by Fink were administrative or investigative in nature. *See* Doc. 46.  Second, probable cause existed; thus, Fink was initiating the state's prosecution.  *See Buckley*, 509 U.S. at 274.  Lastly, even if the acts performed by Fink in the present case were arguably administrative or investigative, absolute immunity will likewise attach to administrative and investigative functions necessary for the initiation and presentation of the State's case.  *See Ireland*, 113 F.3d at 1447.

Accordingly, the Court concludes that under *Imbler*, *supra*, Fink's actions were "intimately associated with the judicial phase of the criminal process." As such, they were directly related to the "initiation and presentation of the State's case," and are, therefore, accorded absolute prosecutorial immunity.  There are no issues of material fact for a jury to decide.  Fink is entitled to judgment as a matter of law on Plaintiff's federal claims.

**B**.     **Plaintiff has failed to establish political subdivision liability on behalf of Portage County.**

When a plaintiff asserts a § 1983 action against a political subdivision for a constitutional violation based on a policy or custom, he must "[1] identify the policy, [2] connect the policy to the [County] itself and [3] show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993), *cert. denied*,

7

510 U.S. 1177 (1994).  Further, "[t]here can be no [subdivision] liability where 'an otherwise sound program has occasionally been negligently administered.'" *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Although Plaintiff asserts in his Second Amended Complaint  that "Portage County, Ohio had a policy of allowing police officers to prepare and file complaints when the clerk's office is closed," (Doc. 46 at ¶ 19), more is required at the summary judgment stage in order for a plaintiff to demonstrate that a genuine issue of material fact exists. *See Foister v. Purdue Pharma, L.P.*, 295 F.Supp.2d 693, 702 (E.D.Ky. 2003).

The Second Amended Complaint fails to set forth facts that illustrate a constitutional violation.  As determined in this Court's Order dated March 25, 2005 (Doc. 84), probable cause existed for Plaintiff's arrest, *id.* at 7-8; thus, there was no constitutional violation in initiating a prosecution against him.  Once Defendants established the absence of a constitutional violation in their Motion for Summary Judgment, Plaintiff could not simply rely on his pleadings; but rather, he was required to bring forth sworn evidence in support of his claims. *Foister*, 295 F.Supp.2d at 702.  Furthermore, "the trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact.  Rather, the nonmoving party has an affirmative obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact." *Id.* (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).

Because Defendants' Motion for Summary Judgment is unopposed, Plaintiff failed in his affirmative burden to bring forth specific sworn facts illustrating a genuine issue of material fact

for trial.  Therefore, summary judgment in favor of Defendants is appropriate on Plaintiff's federal claims.

**C.**      **Fink is entitled to immunity on Plaintiff's state claims.**

Ohio Rev. Code § 2744.03(A)(7) provides in part:

> (A) In a civil action brought against a political subdivision or *an employee of a political subdivision* to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability

> *      *      *

> (7) The political subdivision, and *an employee who is a county prosecuting attorney*, city director of law, village solicitor, or similar chief legal officer of a political subdivision, *an assistant of any such person*, or a judge of a court of this state *is entitled to any defense or immunity available at common law* or established by the Revised Code.

Ohio Rev. Code  § 2744.03(A)(7) (emphasis added).  Section 2744.03(A)(7) preserves the absolute immunity afforded prosecutors at common law. *Barstow v. Waller*, No. 04CA5, 2004 Ohio App. LEXIS 5198, at *17 (4th Dist. Ct. App. Oct. 26, 2004).  Ohio courts use the same functional analysis utilized by the federal courts to determine if absolute prosecutorial immunity is justified. *See Willitzer v. McCloud*, 6 Ohio St. 3d 447, 449 (1983).  Thus, for activities "intimately associated with the judicial phase of the criminal process" – *i.e.*, initiating a prosecution and presenting the State's case – a prosecutor is absolutely immune from suit. *Id.* (quoting *Imbler*, 424 U.S. at 430-31).

By virtue of the Court's conclusion in section A of this opinion, *supra*, – that Fink's actions in the present case were prosecutorial functions, which are absolutely immune from liability – Defendant Fink is absolutely immune from suit on Plaintiff's state claims.

9

Accordingly, there are no issues of material fact left for a jury to decide and Fink is entitled to judgment as a matter of law on Plaintiff's state claims.

**D.      Portage County is entitled to immunity on Plaintiff's state claims.**

Ohio uses a three-tiered analysis to determine if a political subdivision is immune from tort liability.  *Colbert v. Cleveland*, 99 Ohio St.3d 215, 216 (2003).  First, a court must recognize the general rule contained in Ohio Rev. Code § 2744.02(A)(1) that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

Second, a court must look to Ohio Rev. Code § 2744.02(B) and determine if any of the exceptions contained therein apply.[2] *Colbert*, 99 Ohio St.3d at 216.  If any of these exceptions apply to strip the subdivision of immunity and no defense in § 2744.02(B) is applicable, then the court must continue to the third tier of analysis. *Id.*  Here, the Court examines Ohio Rev. Code § 2744.03 to determine whether any of the defenses stated therein apply thus reinstating immunity. *Id.*

In the instant case, the Court holds that Portage County is immune from liability on Plaintiff's state law claims.  Ohio Rev. Code § 2744.02(A)(1) grants state subdivisions tort

_____

[2]  Ohio Rev. Code § 2744.02(B) contains five exceptions to general tort immunity for a political subdivision, which can be summarized as follows:  Subsection 1 exempts the negligent operation of motor vehicles by state employees. Ohio Rev. Code § 2744.02(B)(1).  Subsection 2 exempts the negligent performance of proprietary functions, Ohio Rev. Code § 2744.02(B)(2); however, prosecution work is considered a "Governmental Function" under the Revised Code. Ohio Rev. Code § 2744.01(C)(2)(f).  Subsection 3 exempts the negligent maintenance of public roads. Ohio Rev. Code § 2744.02(B)(3).  Subsection 4 exempts the negligent maintenance of public buildings. Ohio Rev. Code § 2744.02(B)(4). Lastly, subsection 5 exempts any situation where another section of the Revised Code "expressly imposes liability."  Ohio Rev. Code § 2744.02(B)(5). The Court is unable to find and Plaintiff failed to elicit any section of the Ohio Revised Code that exempted tort immunity for the present conduct.

immunity.  None of the exceptions to immunity enumerated in Ohio Rev. Code § 2744.02(B)

apply in the present case.  Thus, it is unnecessary to examine Ohio Rev. Code § 2744.03 to

determine if it would reinstate immunity because § 2744.02(B) has not abrogated Portage

County's immunity.

Accordingly, there are no genuine issues of material fact left for the jury to decide and

Portage County is entitled to judgment as a matter of law on Plaintiff's state claims.


## V.  CONCLUSION

For all the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 90) is

GRANTED in its entirety.


**IT IS SO ORDERED**.


  March 31, 2006                             /s/ John R. Adams
Date                                       John R. Adams
                                           U.S. District Judge


11